OPINION OF THE COURT
Bellacosa, J.
A precise issue in this Federal case is certified to this Court by the United States Court of Appeals for the Second Circuit. We are asked to provide an authoritative statement on the threshold question of whether an oral personal services contract between a fight trainer and a boxer to last “for as long as the boxer fights professionally” provides a definite legally cognizable duration. Conversely, the problem can be framed as whether this temporal description constitutes an employment for an indefinite period, within the strictures of New York’s at-will employment doctrine.
The Federal lawsuit is for an alleged breach of an oral agreement essentially between plaintiff, Kevin Rooney, and defendant, Michael Gerard Tyson. Rooney was to receive 10% of Tyson’s boxing earnings as compensation for his personal training services. The case was tried in the Federal District Court for the Northern District of New York; a jury rendered a $4,415,651 verdict for Rooney. The Trial Judge granted Tyson’s posttrial motion for judgment as a matter of law; the verdict was set aside and the lawsuit dismissed. Rooney appealed to the Second Circuit Court of Appeals. It certified the question to this Court in order to decide its appeal in accordance with *688 governing New York substantive law. We narrowly answer the core question as posed, that this durational clause satisfies New York’s standard with sufficient definitiveness.
L
The undisputed facts are taken from the trial evidence and the certified statement. In 1980, at 14 years of age, Tyson was placed under the supervision of Cus D’Amato, a renowned boxing figure and manager. When Tyson’s mother died in 1983, D’Amato also became his legal guardian. At the beginning of the young man’s boxing career, Rooney and D’Amato agreed that Rooney would train Tyson without compensation until the fighter became a professional athlete. The two further agreed that when Tyson advanced to professional ranks, Rooney would be Tyson’s trainer “for as long as [Tyson] fought professionally.”
Rooney trained Tyson for 28 months without compensation. In March 1985, Tyson turned professional and began enjoying meteoric success. D’Amato died that same year. James Jacobs became Tyson’s manager in 1986. When rumors started in some sports media that Rooney would be replaced as Tyson’s trainer, Rooney queried Jacobs. To quell the speculation, Tyson allegedly authorized Jacobs to state publicly that “Kevin Rooney will be Mike Tyson’s trainer as long as Mike Tyson is a professional fighter.” Jacobs sent Rooney a copy of a press release to that effect. Thereafter, Rooney continued to train Tyson and was compensated for each of Tyson’s professional fights until 1988.
In 1988, apparently in connection with Rooney’s alleged comments regarding Tyson’s divorce and other business-related litigation, Rooney allegedly read a newspaper article stating that Tyson would no longer train with Rooney. Tyson formally terminated his boxer-trainer relationship with Rooney later that year. The Federal lawsuit, claiming breach of the 1982 oral agreement, was begun in 1989.
The jury in Federal court in Albany returned its verdict in favor of Rooney in 1996. Tyson countered after the trial that the agreement was for an indefinite duration and was terminable at will under New York law and therefore unenforceable as a matter of law, regardless of the jury’s verdict. The District Trial Court agreed with Tyson’s legal position and granted him the posttrial victory. The Trial Judge reasoned that “under New York law, terms such as ‘permanent employment’, ‘until retirement’ or ‘long term’ do not state a definite term of employ *689 ment as a matter of law” (956 F Supp 213, 216). The court concluded that “the alleged term of the employment contract, ‘for as long as Tyson boxes professionally,’ does not state a term of definite duration as a matter of law” {id., at 216). It finally declared that “the nature of the proof offered at trial cannot sustain a finding that the employment relationship was anything other than one at-will” (id., at 216).
On Rooney’s appeal, the Second Circuit Court of Appeals certified the question to this Court (127 F3d 295, 298) pursuant to this State’s Constitution and this Court’s Rules of Practice (NY Const, art VI, § 3 [b] [9]; 22 NYCRR 500.17). The focus and role of this Court are confined by the precise and narrow question certified under the collaborative juridical arrangement. No plenary adjudicative authority is authorized or contemplated because the matter is not a case or controversy, as. such, in the State court system.
IL
In New York, “[ajbsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party” (Matter of De Petris v Union Settlement Assn., 86 NY2d 406, 410 [emphasis added]; see, Matter of Hanchard v Facilities Dev. Corp., 85 NY2d 638, 641; Murphy v American Home Prods. Corp., 58 NY2d 293, 300). The at-will presumption may be triggered when an employment agreement fails to state a “definite period of employment,” “fix[ ] employment of a definite duration,” “establish [ ] a fixed duration” or is otherwise “indefinite” (compare, Ingle v Glamore Motor Sales, 73 NY2d 183, 186, 188; Sabetay v Sterling Drug, 69 NY2d 329, 333; Murphy v American Home Prods. Corp., 58 NY2d 293, 300, 305, supra; Weiner v McGraw-Hill, Inc., 57 NY2d 458, 460, 465-466; Martin v New York Life Ins. Co., 148 NY 117).
A sensible path to declare New York law starts with these two steps: (1) if the duration is definite, the at-will doctrine is inapplicable, on the other hand, (2) if the employment term is indefinite or undefined, the rebuttable at-will presumption is operative and other factors come into the equation (see, Weiner v McGraw-Hill, Inc., 57 NY2d 458, 466, supra; see also, Martin v New York Life Ins. Co., 148 NY 117, 121, supra; Ingle v Glamore Motor Sales, 73 NY2d 183, 186, supra).
Initial consideration of the at-will presumption, as the threshold pivot to answer the certified question, bypasses the logical prerequisite and precedential preference to search out *690 and resolve the definiteness aspect first (see, Sabetay v Sterling Drug, 69 NY2d 329, 333, supra; Murphy v American Home Prods. Corp., 58 NY2d 293, 301, supra). That is a major difference of approach between the majority and the dissent.
Our ample previous precedents have not categorically delineated what may differentiate a “definite,” “indefinite,” or “fixed” employment term or duration utilized in various contractual formulations. That ellipsis prompted the certification to us from our Federal court counterpart with respect to this case and appeal in its court. The guidance we advisorily tender should be dispositive of the precise law query as transmitted to us (see, 22 NYCRR 500.17 [a]; Retail Software Servs. v Lashlee, 71 NY2d 788, 790; Karger, Powers of the New York Court of Appeals § 65, at 393-394 [3d ed]). Everything else — including especially the relevant application and actual decision of the case — is, of course, within the exclusive juridical competence of the Second Circuit Court of Appeals.
Notably, this Court has consistently reaffirmed the threshold determination that a definite employment duration does not implicate the at-will employment presumption (see, Matter of De Petris v Union Settlement Assn., 86 NY2d 406, 410, supra; Wieder v Skala, 80 NY2d 628, 633; Ingle v Glamore Motor Sales, 73 NY2d 183, 186, supra; Sabetay v Sterling Drug, 69 NY2d 329, 333, supra; Murphy v American Home Prods. Corp., 58 NY2d 293, 300, supra; Parker v Borock, 5 NY2d 156, 159; Arentz v Morse Dry Dock & Repair Co., 249 NY 439, 443-444; Martin v New York Life Ins. Co., 148 NY 117, 121, supra). This is not simply a chicken-or-egg-which-comes-first puzzle; it is the sensible, analytical progression.
When an agreement is silent as to duration, however, it is presumptively at-will, absent an express or implied limitation on an employer’s otherwise unfettered ability to discharge an employee (see, Sabetay v Sterling Drug, 69 NY2d 329, 336, supra; O’Connor v Eastman Kodak Co., 65 NY2d 724, 725; Murphy v American Home Prods. Corp., 58 NY2d 293, 305, supra; Weiner v McGraw-Hill, Inc., 57 NY2d 458, 465-466, supra). Only when we discern no term of some definiteness or no express limitation does the analysis switch over to the rebuttable presumption line of cases. They embody the principle that an employment relationship is terminable upon even the whim of either the employer or the employee. The agreement in this case is not silent and manifestly provides a sufficiently limiting framework.
*691 This Court, for example, found indefinite such temporally amorphous terms as “permanent” (Arentz v Morse Dry Dock & Repair Co., 249 NY 439, 443-444, supra), to “continue indefinitely and will follow [the employee] in each succeeding year” (Gressing v Musical Instrument Sales Co., 222 NY 215, 218), to “devote [the employee’s] whole time and attention” to the employer’s business (Watson v Gugino, 204 NY 535, 537), and yearly employment for a specified annual salary (Martin v New York Life Ins. Co., 148 NY 117, 119-121, supra). Moreover, we have distinguished employment “for life or a definite period” from those varying terms (Arentz v Morse Dry Dock & Repair Co., 249 NY 439, 444, supra; see, 1 Corbin, Contracts § 4.2, at 560-561 [rev ed 1993]). None of the unenforceable porous phrasings is delimited by legally and realistically cognizable boundaries, as are found in this case.
For context, moreover, this Court adopted the at-will presumption doctrine in Martin v New York Life Ins. Co. (148 NY 117, supra; see, Watson v Gugino, 204 NY 535, 541, supra; Gressing v Musical Instrument Sales Co., 222 NY 215, 218-221, supra; see also, Feliu, Primer on Individual Employee Rights, at 3). There, a general hiring was found to result from an employment agreement that was “yearly” or “by the year” (Martin v New York Life Ins. Co., supra, 148 NY, at 119-120). Because those terms were deemed too indefinite, the at-will rubric took precedence. In reinforcing the still prevailing at-will doctrine, this Court stated:
“ ‘In England it is held that a general hiring, or a hiring by the terms of which no time is fixed, is a hiring by the year * * * With us, the rule is inflexible, that a general or indefinite hiring is prima facie a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve. * * * A contract to pay one $2,500 a year for services is not a contract for a year, but a contract to pay at the rate of $2,500 a year for services actually rendered, and is determinable at will by either party. * * * [I]n all such cases the contract may be put an end to by either party at any time, unless the time is *692 fixed!’ ” (id., at 121, quoting Wood, Master and Servant § 136 [2d ed 1886] [emphasis added]).
Distinctions crop up even in cases where a limitation exists on an employer’s right to discharge an otherwise at-will employee (see, Murphy v American Home Prods. Corp., 58 NY2d 293, supra; see also, Weiner v McGraw-Hill, Inc., 57 NY2d 458, 460, supra; Sabetay v Sterling Drug, 69 NY2d 329, supra). Though an employment contract is of indefinite duration, an express or implied limitation on an employer’s right to discharge may still become operative (see, Weiner v McGraw-Hill, Inc., 57 NY2d 458, 465, 467, supra). Most pertinently, this Court has emphasized also that “ ‘if the employer made a promise, either express or implied, not only to pay for the service but also that the employment should continue for a period of time that is either definite or capable of being determined, that employment is not terminable * * * “at will” after the employee has begun or rendered some of the requested service or has given any other consideration’” (id., at 465, quoting 1A Corbin, Contracts § 152, at 14 [emphasis added]).
New York’s jurisprudence is supple and realistic, and surely not so rigid as to require that a definite duration can be found only in a determinable calendar date. Thus, although the exact end-date of Tyson’s professional boxing career was not precisely calculable, the boundaries of beginning and end of the employment period are sufficiently ascertainable. That is enough to defeat a matter-of-law decision by a Judge, in substitution for resolution at the Federal trial by jury verdict. Under the employment agreement, the durational term was understandable to the parties and reasonably determinable by the fact finders. Moreover, Rooney’s compensation under the contract— for the legal consideration he bound himself to and rendered for years without payment prior to Tyson “turning pro” — was expressly linked to a percentage of Tyson’s earnings within the professional career measuring rod (see, 1A Corbin, Contracts § 152, at 14 [1963]).
The range of the employment relationship, concededly created and actualized for several years in the framework of this Federal dispute, is established by the definable commencement and conclusion of Tyson’s professional boxing career. Though the times are not precisely predictable and calculable to dates certain, they are legally and experientially limited and ascertainable by objective benchmarks. That is what makes this case distinctive within the myriad of arrangements people may undertake.
*693 It is imperative, too, that we emphasize that the aspect of New York’s jurisprudence that we propound today in no way alters the force and effectiveness of general long-standing principles relating to commercial agreements, otherwise governed by common-law or statutory standards (compare, North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171, 175; Cammack v Slattery & Bro., 241 NY 39, 44-45; Ehrenworth v Stuhmer & Co., 229 NY 210; Jugla v Trouttet, 120 NY 21, 28-29; with Sabetay v Sterling Drug, 69 NY2d 329, 335, supra; Murphy v American Home Prods. Corp., 58 NY2d 293, 304-305, supra; Haines v City of New York, 41 NY2d 769, 772-773; see also, UCC 2-309 [2]). The dissent ironically faults the majority repeatedly for such things as “heralds” some “new era” in “oral promises of potentially long-term employment” (see, dissenting opn, at 694). Nothing could be further from the fact. The oral nature of this agreement, unassailably made, is not even in issue since that was conceded out of the case by the parties. Only the definiteness is controverted.
Moreover, we deem it necessary to comment briefly also on the extent of the dissent in relation to the precisely posed certified question. The phrasing in the Second Circuit Court of Appeals’ request is instructive: “in certifying a question of the validity of the particular contractual relationship before us, we are not asking the New York Court of Appeals to interpret a contract or to decide a case * * * but rather to elucidate a series of open and recurring questions of New York law” (127 F3d 295, 297, supra). The preliminary and dispositive question, as we are bound to and have also emphasized, turns on definiteness.
That Court’s question is whether the contract between this fight trainer and this professional boxer to train the boxer “for as long as the boxer fights professionally” may support a definite duration finding. This Court’s response by our majority expression not only answers the question but also adheres to the realistic plenitude of New York’s jurisprudence in this area of the law, and we are well aware of the personal and commercial consequences of the myriad types of arrangements made between parties to these transactions. We are also mindful of the scale of this Court’s role, in constitutionally participating with the Federal court in its exclusive jurisdictional application and adjudication of substantive principles of New York State law is formally and appropriately limited (see, NY Const, art VI, § 3 [b] [9]; 22 NYCRR 500.17; see also, Karger, Powers of the New York Court of Appeals § 65, at 393- *694 396 [3d ed]). The majority’s authoritative response is measured out in proportion to these operative principles and strictures, and with a full appreciation of our heralded common-law interstitial developmental process. We do not at all abandon the tradition that has wisely guided the careful progression of the at-will doctrine and its application in particular circumstances (Cardozo, Nature of the Judicial Process, in Selected Writings of Benjamin Nathan Cardozo, at 115, 134 [Margaret E. Hall ed 1947] [observing that Judges proceed “‘interstitially’ ” “ ‘from molar to molecular motions’ ”], quoting Southern Pac. Co. v Jensen, 244 US 205, 221 [Holmes, J., dissenting]).
The dissent, on the other hand, strongly disagrees with and variously over-characterizes the import and reach of the majority rationale {see, dissenting opn, at 694, 698-699, 704-706). The dissent uses a different and broader approach of its own, not unlike that of the Federal District Court (see, dissenting opn, at 696, 699-705, 706). To be sure, those two differing views reach a conclusion that the agreement is indefinite, but that postulate cannot trigger a dispositional at-will analysis, when this majority, qua Court, determines, as we do, in the threshold step of analysis that the agreement measures up as sufficiently definite. We need not, nor may we, venture in dictum or additional discussion, and we need respond to the Second Circuit and to the dissent no further.
Accordingly, the certified question of the Second Circuit Court of Appeals should be answered that an oral contract between a fight trainer and a professional boxer to train the boxer “for as long as the boxer fights professionally” is a contract for a definite duration.