**Clifford STREIT, Plaintiff,**

v.

**Candace BUSHNELL, Defendant.**

**No. 05 Civ. 5155(VM).**

United States District Court, S.D. New York.

March 23, 2006.

Neal Brickman, Law Office of Neal Brickman, New York, NY, for Plaintiff.

Cem Ozer, Bushell & Valliere, LLP, New York, NY, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Clifford Streit ("Streit") commenced this action under the Court's diversity of citizenship jurisdiction by a com-

plaint (the "Original Complaint") alleging breach of contract and copyright infringement claims against defendant Candace Bushnell ("Bushnell"). Streit later amended the complaint to add defendant Darren Star ("Star") as a party, asserting a fraudulent conveyance claim against him,[1] and modifying some aspects of the pleadings in response to Bushnell's pre-answer motion to dismiss the Original Complaint. Before the Court is Bushnell's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss parts of the First Amended Complaint. For the reasons discussed below the motion is denied.

## I. FACTS

Streit describes himself as a "professional manager and producer in the entertainment industry." (First Amended Compl. ¶ 11.) He alleges that sometime in 1995 Bushnell agreed to employ him as her "manager" pursuant an "oral employment agreement" that Streit refers to as a "Management Agreement." (Id. ¶¶ 12, 13.) Pursuant to that agreement, Streit undertook to sell and promote Bushnell's "work and career including, without limitation," the production of Bushnell's book Sex and the City as a television series. For his services, according to Streit, Bushnell agreed to pay him ten percent of all income Bushnell derived from that production. Under the parties' agreement Streit was to remain as Bushnell's manager "for so long as Bushnell was pursuing her writing career and/or earning monies from the 'Sex and the City' television series." (Id. ¶ 15.)

Streit alleges that, acting as Bushnell's manager pursuant to their agreement, "among other efforts which Streit made to advance Bushnell's career," he used his professional connections successfully to arrange for Bushnell to present her Sex and the City book to Home Box Office, Inc. ("HBO") for adaptation of the work as a cable television series, and that he initiated other meetings with "prominent members of the film and television industry on behalf of Bushnell in order to promote her career." (Id. ¶¶ 17, 18.) Among the business figures to whom Streit introduced Bushnell was Star, who allegedly played a role in the eventual production of the "Sex and the City" programs aired on television by HBO.

Under an agreement among Bushnell, HBO and/or Star, HBO paid Bushnell a "Book Fee" of $100,000 for the production rights to Sex and the City, as well as "Episode Fees" for each episode broadcasted, and "Royalty Fees" on all profits HBO earned from the series. Streit asserts that Bushnell made a payment to him of $10,000, representing ten percent of Bushnell's Book Fee, and that thereafter, claiming she was not receiving any more money from the television series, stopped paying any of the management fees by which Streit claims Bushnell was contractually obligated to compensate him. Streit alleges that Bushnell's representation about not receiving further income from the television programs was false and made for the purpose of concealing the money she was earning from HBO as Episode and Royalty Fees and not paying Streit the portions of those funds due him as "employment compensation" under the parties' Management Agreement. (Id. ¶¶ 20, 21.) According to Streit, the parties' employment relationship remained in effect until sometime in 1999, when Bush-

---

1. Pursuant to a stipulation among the parties, Streit withdrew his fraudulent conveyance claim in response to Star's declaration, sufficiently documented, that he is a resident of California, which would have removed the Court's subject matter jurisdiction over the action under diversity of citizenship rules.

nell purported to terminate the Management Agreement. On these pleadings Streit presents claims alleging breach of contract, quantum meruit and unjust enrichment.

The copyright infringement claim Streit asserts relates to a different literary work. Streit recites that in 1997 he wrote an original fictional movie script (the "Script") entitled "Fashion Victims," to which he held the exclusive copyright from its inception. In it Streit created two fictional characters named "Sebastian Wanus" and "Patrique." In 1998, at Bushnell's request, Streit delivered a copy of the Script to her for comments. By Streit's account, Bushnell read the Script and called Streit to relate that she had " 'loved' it." (*Id.* ¶ 32.) Streit alleges that after reading the Script, Bushnell wrote and published a book entitled *Four Blondes* which, without Streit's consent, copied creative material derived from the Script and thus infringed on Streit's copyright. Streit asserts that he became the exclusive owner of a registered copyright in the Script on May 24, 2005, when he obtained a Certificate of Registration from the Register of Copyrights. In connection with the alleged infringement, Streit claims actual or statutory damages, as well as attorneys fees and costs.

As is to be expected, Bushnell presents a diametric version of the events. In her account, Bushnell portrays herself as "a well-known author and celebrity" who gained "a fair degree of notoriety" by virtue of her popular column in a New York weekly newspaper that was later turned into a best selling book, *Sex and the City.* (Mem. of Law in Supp. of Def. Candace Bushnell's Mot. to Dismiss ("Def.'s Mem."), dated November 21, 2005, at 1.) Bushnell says she and Streit met "socially" in the early 1990s and they "became friends." (*Id.*) Six years after the start of the successful television series based on her book, Bushnell relates, Streit "came out of the woodwork" (*id.* at 2) claiming breach of an alleged oral agreement between the parties and, "[e]ver the opportunist," commenced this litigation "in an apparent attempt to injure [ ] Bushnell's reputation" prior to the release of her latest book (*id.* at 3). Charging that Streit "will say absolutely anything to keep his case alive," to that end "shamelessly and without regard to the truth" changing his story when deficiencies in his Original Complaint were pointed out, Bushnell reminds the Court that "[t]his Court is not [ ] Streit's playground and this lawsuit is not a game," and suggests that "Streit's conduct should be rebuked by this Court." (Reply Mem. of Law in Supp. of Def. Candace Bushnell's Mot. to Dismiss ("Def.'s Reply Mem."), dated December 23, 2005, at 1.)

Hardly disguising her chagrin and impatience about the prospect of defending what she regards as "extremely serious" but nonetheless "frivolous" charges (*id.*), Bushnell seeks a speedy resolution of this litigation. To that end, soon after the action was commenced, in lieu of an answer Bushnell filed a first Rule 12(b)(6) motion to dismiss the complaint. Shortly thereafter, even prior to the initial conference with the Court and any exchange of initial discovery, she sought to file a motion for summary judgment to dispose of Streit's copyright claim. The instant motion promptly followed Streit's filing of the First Amended Complaint.

The manner and approach by which Bushnell has responded to this action prompts the Court to offer a preliminary observation as a decisional guide, for whatever small comfort or instructional value it may contain. As is the case of most defendants, Bushnell's cause for concern and frustration associated with de-

fending a lawsuit is understandable. Litigation, even when it may be meritless, certainly takes the large toll parties must pay in personal resources and professional reputation, costs that, as Bushnell points out, are often hard to live down. To be sure, this form and forum of combat does open the potential for opportunism and other kinds of abuse of process, and hence the undercurrent that runs with some frequency through the protestations of renowned defendants like Bushnell who are brought into the public arena to answer charges of wrongful conduct. At bottom, what their remonstrances suggest is that there are aspects of our adversarial scheme of justice that serve as sporting grounds for the legal system's version of paparazzi, those litigants and lawyers whose chosen survival niche in life, for reasons and returns not too hard to fathom, is to stalk and hound and vex the rich and famous, hauling them into court on grounds at times propped by only faint claim of right or cause. That persons of mark and means would be eager to be rescued from the indignity of defending themselves against allegations they consider baseless and inspired by opportunism, is not unreasonable. But, regrettably from the perspective of the celebrities who feel aggrieved by the attendant trials and tribulations, there is no silver bullet (or fly swatter) readily available to a judge to quickly dispatch the pesky claimants and litigation tactics these defendants decry.

█ Devoutly as Bushnell might wish it to be so, except in very rare cases, Rule 12(b)(6) is not the potent source for the instant relief she seeks. At this early stage of litigation, weighed as it is in favor of the complainant, and impeded by an absence of a properly balanced and reliable evidentiary record, Bushnell's hurry to dispose of this dispute runs counter to another vital principle of public policy that is embodied in our justice system and entrusted to the courts: insuring fairly to every litigant the right to his day in court. Accordingly, it is not the role of the Court at this point to choose summarily who is right or wrong, to sift through a meager record and decide which litigant is acting in good or bad faith, or which claims or defenses are meritorious and worthy of final judgment. In sum, the Rules provide no agile means enabling the Court to make the value judgments, credibility determinations and resolutions of factual disputes that Bushnell's instant motion implicitly demand.[2]

## II. STANDARD OF REVIEW

█ Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). In making this determination, a court must accept all well-pleaded factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). To inform its ruling in this

---

**2.** To cite just one example among many, in her reply papers Bushnell notes that in taking issue with Bushnell's reference to Streit's role as that of a literary agent, Streit "screams" about the alleged mischaracterization. (Def.'s Reply Mem. at 2 n. 2.) Bushnell then asserts that Streit "is completely incorrect," and denies that she ever claimed that Streit was her agent, literary or otherwise. *Id.* She then declares that Streit "is also incorrect" in

stating that Bushnell never disputed that she paid him $10,000 as his percentage fee for placing *Sex and the City* with HBO. Bushnell's matter-of-fact remarks that Streit is "incorrect" in his account of the events serve only to confirm that these differences manifest quintessential disputes as to issues of material fact that the Court cannot properly adjudicate at this stage of the proceedings.

regard, a court may review documents integral to the complaint upon which the plaintiff relied in drafting the pleadings, as well as "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989)); *see also Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir.2000).[3]

## III. DISCUSSION

■ In response to Streit's breach of contract, quantum meruit and unjust enrichment causes of action, Bushnell contends that those claims are barred by the New York Statute of Frauds or by the applicable statute of limitations. In particular, Bushnell takes issue with the absence of specifics from Streit's pleadings, challenges facts that Streit alleges and that Bushnell denies or maintains Streit did not describe accurately, and points to inconsistencies Bushnell finds between statements contained in the Original and First Amended Complaints.[4] For instance, Bushnell chides Streit because, though he claims professional experience in the entertainment industry and alleges having

---

**3.** Attached to his response to the motion at hand, Streit includes his own affidavit clarifying or elaborating on several aspects of his pleadings as set forth in the First Amended Complaint. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, dated December 14, 2005.) A complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998). Because Streit's Affidavit was not a document relied upon, attached to or incorporated by reference in the First Amended Complaint, the Court has given no consideration to its content.

**4.** Bushnell expends considerable energy analyzing differences between the Original and the First Amended Complaint. She points to a number of alleged inconsistencies between them, and urges the Court to disregard changes in factual statements Streit made in the amended pleadings in response to Bushnell's first motion to dismiss. (*See* Def's Mem. at 3–5 and Def.'s Reply Mem. at 3–5.) The Court declines this invitation, as it runs against the letter and spirit of the flexible pleading standards embodied in Federal Rules of Civil Procedure 8(a) and 8(e) with regard to original complaints and Rule 15 as to amended pleadings.

It is not uncommon for litigants to amend pleadings in response to deficiencies pointed out by an adversary or even by the Court, either before a dispositive motion is filed or in response to a ruling on a motion that grants leave to replead and offers specific guidance as to how any flaws in the pleadings may be cured to survive dismissal. Some such corrective amendments serve a useful purpose in avoiding unnecessary motion practice. Not surprisingly, some later pleadings made in this context necessarily may be at odds with allegations the party asserted in the original pleadings. It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings. Contrary to such a result, Rule 8(e) explicitly permits litigants, even within the same pleadings, to "state as many separate claims or defenses as the party has *regardless of consistency.*" Fed. R.Civ.P. 8(e) (emphasis added). And Rule 15, after authorizing amendments of pleadings as-of-right within a specified period, provides for amendments with permission of the court and instructs that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

In support of her request, Bushnell cites *Wallace v. New York City Dep't of Corrections*, No. 95 Civ. 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct.9, 1996). There, the court noted that in an amended complaint the plaintiff had "blatantly" changed his statement of the facts in response to the defendants' motion to dismiss and "directly contradict[ed]" allegations set forth in the original complaint. *Id.* The court accepted the factual account in the original complaint and dismissed the action. This Court finds the circumstances of the instant case distinguishable and thus declines to follow *Wallace*. The factual change at issue

been Bushnell's manager and involved in the HBO deal, "Streit cannot even state what the terms of the agreement are, alleging only 'upon information and belief' what he believes the general terms to be." (Def.'s Mem. at 6.) On this point, Bushnell adds incidentally that Streit "is incorrect in his understanding of the deal." (*Id.* at 6 n. 6.) In a similar vein, Bushnell notes that while Streit purported to have served as her manager, both the Original and the First Amended Complaint "are tellingly silent as to what 'management' activities [ ] Streit performed on [ ] Bushnell's behalf." (*Id.* at 11.)

Relying on New York General Obligations Law ("NYGOL") § 5–701(a)(10), which requires that contracts relating to negotiating the purchase or sale of a business opportunity be in writing,[5] Bushnell maintains that the oral agreement upon which Streit's action is grounded cannot withstand a motion to dismiss because "[a] failure to assert the elements of a claim and the facts to support the same should result in the cause of action being dismissed." (Def.'s Mem. at 8) (citing *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 667 (S.D.N.Y.2001)).

The Court need not address these arguments in any extensive detail. For, Bushnell's motion, though acknowledging the proper standard, nonetheless urges an unduly constricted reading of Streit's pleadings, is premised on a flawed application of Rule 12(b)(6) jurisprudence, and rests fundamentally upon a misconception of relevant state law doctrine.

■ In reviewing a complaint for legal sufficiency for the purposes of adjudicating a Rule 12(b)(6) motion, the Court's point of departure is Rule 8(a)(2). Pursuant to the liberal pleading requirements of the Federal Rules of Civil Procedure, a plaintiff need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Bushnell's proposition that the pleadings must contain allegations reflecting each of the material elements of a viable cause of action rests upon a doctrine specifically repudiated by the Supreme Court in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Rejecting such a heightened test as inconsistent with Rule 8(a)'s simplified pleading standard, which applies to all civil actions, the *Swierkiewicz* Court underscored that to satisfy Rule 8(a)(2) a complaint must include only a short and plain statement of the facts designed simply to " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.*

in *Wallace* was "blatant" and directly contradictory of the earlier allegations because it entailed an essential element of plaintiff's cause of action without which plaintiff could not make out a prima facie case. The Court does not read the modifications of the pleadings at issue here to implicate such dispositive effect.

5. NYGOL § 5–701(a)(10) provides in pertinent part:

 a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith ... if such agreement, promise or undertaking:

 . . . .

 10. Is a contract to pay compensation for services rendered ... in negotiating the purchase [or] sale ... of a business opportunity....

N.Y. Gen. Oblig. Law § 5–701(a)(10) (McKinney 2006).

Insofar as the heightened pleading doctrine Bushnell relies upon is reflected in Second Circuit case law expressing a contrary rule, it predates *Swierkiewicz* and was subsequently overruled by the Second Circuit. *See, e.g., Phelps v. Kapnolas,* 308 F.3d 180, 186–87 (2d Cir.2002) ("However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact ... the court may not go beyond Fed.R.Civ.P. 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation ... either directly or by inference.").

 In the light of the applicable pleading standard, Streit's complaint is more than sufficient to satisfy Rule 8(a)(2). By the same token, Bushnell's motion, even putting its polemics aside, misses the mark. The factual predicate for Bushnell's legal theory based on the Statute of Frauds is that the parties' agreement as Streit describes it pertained solely to the marketing of the rights to Bushnell's book *Sex and the City* for adaptation to television or film, and thus constituted a contract relating to the negotiation of a business opportunity within the meaning of NYGOL § 5–701(a)(10), rather than an employment agreement for professional management services that is not subject to NYGOL § 5–701(a)(10), as Streit alleges. Bushnell's argument ignores an elementary threshold governing Rule 12(b)(6) motions to dismiss: that, regardless of the defendant's denials and contrary versions of the underlying events, it is the *plaintiff's* account of the facts that the Court must accept as true and from which the Court is directed to draw all reasonable inferences in *plaintiff's* favor.

Applying these rules, the Court finds that a fair reading of Streit's First Amended Complaint reveals that it sets forth numerous allegations, already summarized in the factual recitation above, that sufficiently describe an agreement for services broadly extending beyond a role as an intermediary relating only to Bushnell's *Sex and the City,* and that claim monetary damages attributable to professional services larger than the promotion of a single literary work. Streit explicitly states that Bushnell agreed that Streit "would be employed" (First Amended Compl. ¶ 15) under an oral "employment agreement" (*id.* ¶ 13) to serve as her "manager" (*id.*), and characterizes the contract as a "Management Agreement" (*id.*). The services Streit provided under the agreement encompassed selling and promoting Bushnell's *"work and career* including, *without limitation,"* the television production of *Sex and the City.* (*Id.* (emphasis added).) Acting as Bushnell's manager under the agreement, Streit states that *"among other efforts"* he made to advance Bushnell's career, he introduced Bushnell to HBO and played a role in the negotiation' of the television series of *Sex and the City.* (*Id.* ¶ 17 (emphasis added).) He also claims he initiated other meetings with members of the entertainment industry to "promote [Bushnell's] career." (*Id.* ¶ 18.) As the damages he claims having suffered by reason of Bushnell's breach, Streit specifies the non-payment of the Episode and Royalty Fees "or any other monies due and owing" under the Management Agreement that constituted Streit's "employment compensation." (*Id.* ¶ 21.) These allegations are distinctly at odds with Bushnell's contention that the parties' transaction embodied merely an agency relationship requiring payment of a finder's fee solely pertaining to the promotion of *Sex and the City.*

To this extent, Bushnell's reliance on the New York case law she cites is misplaced. Each of those cases entailed an agency relationship under an alleged oral contract

limiting its services to procuring or promoting a particular business transaction or creative work. *See, e.g., Sporn v. Suffolk Mktg., Inc.,* 56 N.Y.2d 864, 453 N.Y.S.2d 393, 438 N.E.2d 1108 (1982) (a music album); *Freedman v. Chem. Constr. Corp.,* 43 N.Y.2d 260, 401 N.Y.S.2d 176, 372 N.E.2d 12 (1977) (a construction contract to build a chemical plant); *Stephen Pevner, Inc. v. Ensler,* 309 A.D.2d 722, 766 N.Y.S.2d 183 (App. Div. 1st Dep't 2003) (a book). In *Freedman* the New York Court of Appeals explained that NYGOL § 5–701(a)(10) "applies to various kinds of *intermediaries* who perform *limited services* in the consummation of certain kinds of commercial transactions." 401 N.Y.S.2d 176, 372 N.E.2d at 16 (emphasis added).

By contrast, liberally read, Streit's pleadings describe services that are neither those of an intermediary, nor limited to one business transaction. Rather, the complaint suggests that the parties had maintained an employment relationship that began in 1995 under what in form and substance may be properly deemed an employment contract that New York courts have held are not subject to NYGOL § 5–705(a)(10). *See Riley v. N.F.S. Servs., Inc.,* 891 F.Supp. 972, 977 (S.D.N.Y.1995) ("[W]here the plaintiff's function transcends the limited role of serving as an intermediary, the Statute of Frauds does not apply."); *Super v. Abdelazim,* 108 A.D.2d 1040, 485 N.Y.S.2d 612, 614 (App. Div. 3rd Dep't 1985) (noting that the plaintiff's allegations of an oral joint venture agreement demonstrated a role more extensive than negotiating a particular business opportunity and contemplated rendering "a wide variety of services, making his claim broad enough to survive the limitations of [NYGOL] § 5–701(a)(10)"); *see also Rooney v. Tyson,* 91 N.Y.2d 685, 674 N.Y.S.2d 616, 697 N.E.2d 571, 575 (1998) (treating oral agreement between trainer and boxer for training/management services that would last "for as long as the boxer fights professionally" as an employment contract).

The Court concludes that the conflicting accounts of the parties' understandings evident in the record of the instant motion raise genuine disputes as to material facts that require discovery to resolve by motion for summary judgment or at trial, and that thus cannot properly be decided in a determination on a Rule 12(b)(6) motion to dismiss.

## A. STATUTE OF LIMITATIONS

 The statute of limitations for breach of contract actions in New York is six years. *See* N.Y. C.P.L.R. 213(2). The claim accrues and the period of limitations begins to run when the breach occurs. *See Ely–Cruikshank Co., Inc. v. Bank of Montreal,* 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985, 986 (1993). While conceding that Streit does not expressly say so, Bushnell nonetheless insists that "it is absolutely clear ... that [ ] Streit contends [ ] Bushnell failed to pay him the fee he was owed before 1999." (Def.'s Mem. at 15). The Court cannot ground a ruling on a motion to dismiss on the defendant's speculation as to what the plaintiff believes constituted a termination of the contract and when the breach occurred. The Court is bound to give credence only to the plaintiff's actual pleadings as stated in the complaint, not to the defendant's characterization of what the plaintiff may or may not have intended.

In the First Amended Complaint Streit states that Bushnell purported to terminate the Management Agreement "[i]n or about 1999." (First Amended Compl. ¶ 22.) Streit commenced the instant action on May 31, 2005. Thus, there is factual uncertainty as to when in 1999 the alleged breach occurred. Nonetheless, reading

 

the complaint in the light most favorable to Streit and drawing all reasonable inferences in his favor, and absent evidence refuting a finding otherwise, it is entirely conceivable that Streit can establish through discovery that Bushnell's termination of the contract took place at some point in 1999 within six years of May 31, 2005. Moreover, without a more detailed factual record establishing all of the relevant terms of the parties' alleged agreement, it is impossible for the Court to determine at this point what other action Bushnell may have taken, particularly relating to non-payment of the management fees at issue, that may have constituted a breach of a material provision of the alleged contract. Accordingly, the Court finds no sufficient basis to dismiss Streit's contract claims on statute of limitations grounds.

## B. *COPYRIGHT INFRINGEMENT*

■ Bushnell's motion to dismiss Streit's copyright action is limited only to the period within which Streit may properly claim monetary damages and the type of such damages and fees he may recover. Absent any discovery establishing what copyright infringements may have occurred and when such wrongs may have been committed, the Court finds Bushnell's motion premature on the factual record before the Court. Accordingly, the Court denies Bushnell's partial motion to dismiss Streit's copyright infringement action.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant Candace Bushnell (Docket Nos. 6 and 21) to dismiss the complaint herein is DENIED; and it is further

**ORDERED** that the parties are directed to confer and to propose to the Court for approval within twenty days of the date of this Order an agreed-upon Case Management Plan in the form provided by the Court.

**SO ORDERED.**