NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

D/AQ CORPORATION, dba DAUM COMMERCIAL REAL ESTATE
SERVICES[1], a California Corporation,
*Plaintiff/Appellee*,

*v.*

INTRAVEST 2851 KATHLEEN LLC, an
Arizona limited liability company,
*Defendant/Appellant*.

No. 1 CA-CV 16-0620
FILED 1-11-2018

Appeal from the Superior Court in Maricopa County
No. CV2014-014493
The Honorable Randall H. Warner, Judge
The Honorable Douglas Gerlach, Judge

**REVERSED AND REMANDED**

COUNSEL

Bourque Law Firm, PC, Phoenix
By Arthur J. Bourque
*Counsel for Defendant/Appellant*

---

[1]     On the court's own motion, the caption is hereby amended as
reflected in this decision and shall be used on all further documents filed in
this appeal.

Tiffany & Bosco, Phoenix
By Robert D. Mitchell, Sarah K. Deutsch, Amy D. Sells
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

¶1        Intravest 2851 Kathleen, LLC ("Kathleen") appeals the superior court's judgment entered in favor of D/AQ Corporation, dba DAUM Commercial Real Estate Services ("DAUM"), following a jury verdict awarding damages on DAUM's claim for breach of contract. Kathleen argues the court erred as a matter of law in finding that the agreement at issue was not subject to statutory requirements governing compensation for real estate brokerage services. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Kathleen showed interest in purchasing commercial real estate ("the Property") from Climatec, Inc./JVK Holdings, LLC ("Seller"), which had listed the Property with DAUM, a real estate broker. The listing agreement provided that DAUM was to receive 2% of the selling price as a brokerage commission for sale of the Property. Robert Lundstedt, a real estate salesperson, handled the listing for DAUM and served as dual agent for Seller and Kathleen in connection with the transaction.

¶3        Several weeks prior to closing, Kathleen informed Lundstedt it intended to sell the Property after acquiring it. Following additional discussion between Lundstedt and Mason Cave, one of Kathleen's managers, they entered into a listing agreement giving DAUM exclusive authorization to lease or sell the Property on behalf of Kathleen once it had acquired title.

¶4        Shortly thereafter, Seller became concerned that Kathleen did not have sufficient funds to pay for closing costs and demanded that DAUM reduce its commission from 2% to 1.5%. After further discussion, Lundstedt emailed Cave the following proposal:

2

I'm preparing my broker for the meeting with [Seller] today. I told my broker that if [Seller] reduces our fee to 1.5 %, that you guys will make up the difference of .5 % at the close of escrow, per my discussions with [your business partner] this weekend. Can you confirm this, for my broker, before our meeting with [Seller] (11am), please?

Cave's reply email stated: "Confirmed. We make up fee of 0.5% when we sell the property." For ease of reference, we refer to this email exchange hereinafter as the "Agreement."

¶5        The transaction between Seller and Kathleen closed in September 2012, with a purchase price of $19,058,823. DAUM was paid $274,632.34 from Seller's proceeds as a 1.5% commission.

¶6        In August 2014, Kathleen sold the property; DAUM represented Kathleen, and a different broker represented the buyer. The brokers received a combined commission of 4% of the $21,600,000 purchase price. Although a dispute arose prior to closing between Kathleen and DAUM as to how the commission would be divided between the brokers, the relevant point here is that Kathleen refused to authorize the title company to pay DAUM the additional 0.5% (approximately $95,000) commission contemplated by the Agreement.

¶7        DAUM filed a complaint for breach of contract alleging that Kathleen agreed in writing to "make up for the commission reduction" in the 2012 transaction by paying the $95,000 when the Property was sold in the 2014 transaction. Kathleen moved for summary judgment, asserting the Agreement was not enforceable because it failed to meet the statutory requirements governing real estate employment agreements and the statute of frauds pursuant to Arizona Revised Statutes ("A.R.S.") sections 32-2151.02 and 44-101(7), respectively. In denying the motion, the superior court found that Kathleen's agreement to "make up" the 0.5% difference did not constitute a real estate employment agreement as contemplated by A.R.S. § 32-2151.02 nor was it subject to the statute of frauds, A.R.S. § 44-101(7).

¶8        At trial, Kathleen unsuccessfully moved for judgment as a matter of law, again asserting lack of compliance with statutory requirements governing a broker's right to collect a commission. The motion was denied. The superior court declined to instruct the jury on whether the Agreement satisfied the statutory requirements. The jury awarded damages to DAUM in the amount of $95,290, and the court

awarded attorneys' fees to DAUM pursuant to A.R.S. § 12-341.01(A). After entry of judgment, the court denied Kathleen's renewed motion for judgment as a matter of law, and this timely appeal followed.

## DISCUSSION

**¶9** The issue before us is whether the superior court erred in determining that the Agreement was not subject to statutory requirements that govern real estate commission agreements. In reviewing the court's ruling, "we view the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 567, ¶ 34 (App. 2003). We review de novo the court's grant or denial of a motion for judgment as a matter of law. *Id.*

**¶10** "Arizona places 'strict requirements' on real estate professionals who seek to recover commissions." *Young v. Rose*, 230 Ariz. 433, 436, ¶ 13 (App. 2012). As relevant here, the statute of frauds provides that "*an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission*" shall not "be brought in any court . . . unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized." A.R.S. § 44-101(7) (emphasis added). A.R.S. § 32-2151.02 establishes the requirements for a real estate employment agreement, which is defined as "a written agreement by which a real estate broker is entitled to *compensation for services* rendered pursuant to § 44-101, paragraph 7." A.R.S. § 32-2151.02(E) (emphasis added).

**¶11** Given these statutory requirements, "a real estate agent may sue to recover compensation due under a real estate employment agreement *only* if there is a written agreement that complies with both A.R.S. §§ 44–101(7) and 32–2151.02(A)." *Young*, 230 Ariz. at 437, ¶ 24 (emphasis added).

**¶12** DAUM argues that the Agreement did not "authorize or employ" DAUM to purchase or sell real property for a commission, but was merely an agreement to make up the 0.5% difference that was necessary to facilitate closing the deal. According to DAUM, there was "already a valid, enforceable real estate employment agreement" for the 2% commission and the Agreement was an entirely new agreement. We conclude that DAUM reads the statutes too narrowly; a broker (including a salesperson) who seeks "compensation for services" arising from the purchase or sale of real

estate must comply with the requirements for a real estate employment agreement set forth in A.R.S. § 32–2151.02(A).

¶13      DAUM represented the Seller and Kathleen during the first transaction.  As provided in its listing agreement with DAUM, Seller was responsible for the payment of all of DAUM's 2% commission.  After Seller pressured DAUM to reduce its commission, the structure of the commission changed because Seller was only willing to pay 1.5%.  DAUM and Kathleen then entered the Agreement, which provided that Kathleen would "make up the difference" by paying the 0.5% commission upon resale of the property.  Regardless of how the Agreement is labeled, or when the commission was to be paid, the undisputed evidence shows that the Agreement was entered to compensate DAUM for the services it provided in connection with Kathleen's purchase of the Property.

¶14      Lundstedt testified that before closing, Seller told him there was not enough money to cover the closing and suggested that DAUM reduce its commission.  Lundstedt then told one of Kathleen's members, "I'm getting squeezed by the seller on the commission and, basically it stems from you guys aren't -- you don't have the ability to put -- you know, put up enough money."  Kathleen then agreed to pay the 0.5% commission.  Lunstedt confirmed at trial that he was "providing brokerage services" for Kathleen in the first transaction, and that DAUM "wanted to be paid for those services."

¶15      "Compensation" is defined as "any fee, commission, salary, money or other valuable consideration for services rendered or to be rendered as well as the promise of consideration whether contingent or not."  A.R.S. § 32-2101(16).  It is undisputed that DAUM performed services throughout the transaction for both parties.  Until the Agreement was entered, the compensation for such services was to be paid from Seller's side of the ledger; after the Agreement, part of the compensation for services switched to Kathleen's side.  Whether DAUM had already entered into a real estate employment agreement with Seller is irrelevant—nothing in the statutory provisions limits a broker from entering into only one agreement.  Stated differently, simply because DAUM signed a listing agreement with Seller did not excuse DAUM from complying with the statutory requirements governing agreements for compensation of services.  As the broker that provided brokerage services to Kathleen for compensation, DAUM was required to ensure that the Agreement complied with A.R.S. § 32-2151.02(A).

¶16        To be enforceable, a real estate employment agreement must (1) "[b]e written in clear and unambiguous language," (2) "[f]ully set forth all material terms, including the terms of broker compensation," (3) "[h]ave a definite duration or expiration date, showing dates of inception and expiration," and (4) "[b]e signed by all parties to the agreement."  A.R.S. § 32-2151.02(A)(1)-(4).

¶17        Assuming that DAUM could establish that it complied with requirements 1, 2, and 4 of § 31-2151.02(A), the Agreement is unenforceable because it does not have a definite duration or expiration date.  Although a reasonable time for performance of a contract may generally be implied, *Zancanaro v. Cross*, 85 Ariz. 394, 398 (1959), the same principle does not apply here because our legislature has placed strict requirements on real estate professionals who seek to recover commissions, *Young*, 230 Ariz. at 436, ¶ 13.  Thus, real estate employment agreements *must* contain a definite duration or expiration date.  *See Red Carpet-Barry & Assocs. v. Apex Assocs.*, 130 Ariz. 302, 305 (App. 1981) (concluding that an alleged "finder's fee contract" was a "listing agreement," and thus broker could not "avoid the necessity of a written listing agreement with a definite expiration date").  The Agreement provided that the commission would be paid when the property was re-sold by Kathleen.  When that would occur, however, was uncertain at best.

¶18        DAUM cites cases from other jurisdictions for the proposition that an ascertainable event is of sufficiently certain duration even though there is uncertainty of when the event will occur.  *See Overman v. Fluor Constructors, Inc.*, 797 F.2d 217 (5th Cir. 1986); *Aaland v. Lake Region Grain Coop., Devils Lake, N.D.*, 511 N.W.2d 244 (N.D. 1994); *H.L. Miller Mach. Tools, Inc. v. Acroloc Inc.*, 679 F. Supp. 824 (C.D. Ill. 1988); *Rooney v. Tyson*, 697 N.E.2d 571 (N.Y. 1998).  These cases are not persuasive, as none of them involve real estate commissions, much less the type of stringent statutory requirements applicable in Arizona.  The Agreement's duration was indefinite and therefore fails to satisfy the requirements of a real estate employment agreement.

¶19        Although denial of the 0.5% real estate commission under these circumstances may seem harsh, real estate brokers are presumed to know the law.  *See Young*, 230 Ariz. at 437, ¶ 24 (citing *Gray v. Kohlhase*, 18 Ariz. App. 368, 371 (1972)).  Accordingly, because the Agreement does not comply with Arizona's strict requirements for real estate employment agreements, it is unenforceable.  *See Young*, 230 Ariz. at 436, ¶ 18 (rejecting the "contention that non-compliance with A.R.S. § 32–2151.02(A)(4) merely provides a basis for regulatory action against a licensed real estate

professional, but poses no impediment to a civil action for unpaid commissions"). Kathleen is therefore entitled to judgment as a matter of law.[2]

**¶20** Kathleen requests attorneys' fees pursuant to A.R.S. § 12-341.01, which allows us to award fees to the prevailing party. In our discretion, we deny the request. As the prevailing party, however, Kathleen may recover costs incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶21** We reverse the superior court's judgment in favor of DAUM and remand for entry of judgment in favor of Kathleen.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] Given our conclusion that DAUM is not entitled to collect the 0.5% commission, we need not address Kathleen's arguments that the court erred in denying several proposed jury instructions.