Louis Morizio, Plaintiff,

against
Gregory A. Roeder, MATTHEW P. REINER and ADIRONDACK RESEARCH AND MANAGEMENT, INC., Defendants.


3005-12

The Wagoner Firm, PLLC
Attorneys for Plaintiff
(Matthew Wagoner, James F. Faucher II and 
Matthew Toporowski, of counsel)
8 Thurlow Terrace
Albany, New York 12203
E. Stewart Jones Hacker Murphy, LLP
Attorneys for Defendants
(James E. Hacker and Thomas J. Higgs, of counsel)
28 Second Street
Troy, New York 12180


Richard M. Platkin, J.

Plaintiff Louis Morizio, a shareholder and alleged former employee of defendant Adirondack Research and Management, Inc. ("ARMI"), commenced this commercial action in 2012, seeking to recover damages for breach of contract, fraud, tortious interference with [*2]contract, breach of fiduciary duty and unjust enrichment. Morizio also petitioned for the judicial dissolution of ARMI pursuant to Business Corporation Law ("BCL") § 1104-a. 
Pending before the Court are three separate motions: (1) plaintiff's motion for "leave to amend the amended complaint and . . . leave to renew his prior motion to amend the amended complaint;" (2) defendants' motion for summary judgment dismissing plaintiff's complaint; and (3) plaintiff's cross motion to compel disclosure.
BACKGROUND
According to plaintiff's Amended Verified Complaint dated October 9, 2012 ("Complaint"), ARMI was incorporated in 2005 to serve as an investment advisor to the Adirondack Small Cap Fund ("Fund"). Pursuant to an Agreement dated April 17, 2005 ("Shareholder Agreement"), Morizio and the two individual defendants, Gregory Roeder and Matthew Reiner, agreed to become equal owners of ARMI. Among other things, the Shareholder Agreement provided that Morizio would be compensated pursuant to a schedule tied to assets under ARMI management.
At the time, Morizio allegedly controlled substantial financial assets through an investment advisory firm he owned: The Center For Financial Planning ("TCFP"). Following execution of the Shareholder Agreement, Morizio arranged for TCFP assets to be managed by ARMI and invested in the Fund. The Complaint alleges that TCFP assets initially comprised the bulk of the monies invested in the Fund and were the principal generator of revenues for ARMI during its first three years of operation, which is said to be the critical period in which a new mutual fund must be in existence in order to be rated by an independent organization. Morizio also claims to have conferred additional benefits upon ARMI by providing it with discounted office space in a building he owned and facilitating placement of the Fund on a trading platform without the payment of the standard fee.
On December 15, 2006, the parties entered into a Buy-Sell Agreement that, among other things, provided for the payment of compensation to any shareholder for his equity interest in the corporation upon the happening of certain events, including a shareholder's termination of employment from ARMI. On the same date, Morizio allegedly entered into a new compensation and employment agreement with ARMI ("Compensation Agreement"). 
Under the terms of the alleged Compensation Agreement, Morizio was to be paid a specified percentage of monies invested in the Fund, one-half of the total fees charged for managing the investment assets of individual clients, and 20% of the total fees charged for managing institutional accounts. This compensation was to be paid on a monthly basis, and ARMI was required to provide plaintiff a quarterly statement detailing the calculation of his compensation. Morizio also was to be provided reasonable access to ARMI's books and records to verify said calculations. 
In January 2008, Morizio sold TCFP to Berkshire Bank ("Berkshire"), allegedly intending to transition his employment to ARMI pursuant to the Compensation Agreement. Plaintiff remained in control of TCFP's assets through the end of 2009 pursuant to an employment agreement with Berkshire, and the assets remained invested in the Fund under the management of ARMI. As of January 1, 2010, Morizio no longer was employed by Berkshire, but was subject to a non-compete agreement that carved out employment with ARMI.
In a Decision & Order dated February 14, 2014 ("2014 Decision"), the Court: (1) [*3]partially granted defendants' CPLR 3211 motion to dismiss certain causes of action in the Complaint, including the cause of action alleging breach of fiduciary duty, which was not pleaded with the heightened particularity required by CPLR 3016 (b); (2) granted defendants' motion for leave to make a late election under BCL § 1118 to purchase Morizio's minority ownership interest in ARMI; and (3) denied Morizio's cross motion seeking to conditionally withdraw his BCL § 1104-a claim for dissolution pursuant to BCL § 1116 if the Court allowed defendants to make a late election. Thus, four causes of action remain to be adjudicated in this action:[FN1]
 Morizio's claims for (1) breach of contract, (2) accounting, (3) fraud and (4) quantum meruit.[FN2]

The first cause of action, alleging breach of contract, is founded on allegations that ARMI breached the Compensation Agreement by (1) failing to pay compensation to Morizio in accordance with the agreement, and (2) interfering with and preventing Morizio from performing the terms and conditions of the alleged agreement. Defendants contend that ARMI is not bound by the alleged written agreement, citing the absence of any signature by a representative of ARMI.
The second cause of action, demanding an accounting, is predicated on allegations that the Compensation Agreement required ARMI to provide Morizio with (1) quarterly statements showing the calculation of his compensation in reasonable detail; and (2) reasonable access to the books, records and personnel of the corporation to verify the compensation owed to him.
As originally alleged in the Complaint, Morizio accused defendants of committing fraud with respect to seven specified matters: (1) misrepresenting that he would be compensated under the Shareholder Agreement; (2) misrepresenting that he would be compensated under the Compensation Agreement; (3) falsely representing that he would have access to ARMI's books and records; (4) refusing to accept clients/assets generated by him; (5) refusing to allow him to perform his employment functions after the Fund was in operation for three years and received an independent rating; (6) failing to allow him to perform his employment duties, yet refusing to comply with the Buy-Sell Agreement; and (7) diluting his equity interest in ARMI by improperly issuing new shares.
In the 2014 Decision, the Court dismissed the latter four claims of fraud (Compl., ¶ 65 [D-G]) due to the absence of any actionable misrepresentations or concealment. The first claim of fraud, alleging that defendants did not intend to perform under the Shareholder Agreement, was dismissed for failure to allege a breach of duty collateral to the contract between the parties (id., [A]). As to the two surviving allegations of fraud (id., [B-C]), the Court observed that they were "vulnerable to dismissal on the same basis [as the first allegation] — since the alleged misrepresentations concern defendants' future performance under the Compensation Agreement" (2014 Decision, p. 9). Nonetheless, given the parties' conflicting factual allegations concerning [*4]the alleged Compensation Agreement, the Court declined to dismiss the allegations at the pre-answer stage (id.). 
The final cause of action, for quantum meruit, alleges that Morizio rendered services to ARMI since December 2006, and all parties were aware that Morizio expected compensation for the services he rendered.
The parties thereafter engaged in extensive and prolonged fact discovery regarding the remaining non-dissolution claims. With respect to the BCL § 1118 (b) buy-out remedy, both sides have engaged experts to value plaintiff's interest in ARMI as of the pertinent valuation date. The time in which to complete disclosure has concluded, and Morizio filed a trial-term Note of Issue and Certificate of Readiness on June 9, 2017.
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Defendants move for summary judgment dismissing Morizio's complaint in its entirety. Summary judgment is a drastic remedy and should be granted only if there are no material issues of disputed fact (see Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). In evaluating a motion for summary judgment, a court should simply determine whether, viewing the evidence in the light most favorable to the nonmoving party, material issues of disputed fact preclude the grant of judgment as a matter of law (see Red Zone LLC v Cadwalader, Wickersham & Taft LLP, 27 NY3d 1048, 1049 [2016]). The party moving for summary judgment has the initial burden of coming forward with admissible proof to support the motion, so as to warrant the Court directing judgment in the movant's favor; the burden then shifts to the opposing party to demonstrate, by competent evidence, the existence of any factual issue requiring a trial of the action (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
A. Breach of Contract
Defendants tender three grounds for dismissal of the claim for breach of contract. First, they argue that the Compensation Agreement lacks sufficient definiteness to constitute a valid employment contract. Second, defendants argue that they did not sign or otherwise bind ARMI to the alleged Compensation Agreement. Finally, defendants argue that a contractual claim based on the unsigned Compensation Agreement is barred by the Statute of Frauds. The Court will consider each of these contentions in turn.
1. Indefiniteness
ARMI first contends that Morizio's claim for breach of contract must be dismissed because the Compensation Agreement does not include the elements necessary to constitute a valid employment contract. In particular, ARMI asserts that the Compensation Agreement is indefinite because it lacks a fixed expiration date, thereby triggering the presumption of at-will employment.
"To be an effective and valid employment contract, all the essential elements thereof must be shown. These elements consist of the identity of the parties, the terms of employment, which include the commencement date, the duration of the contract and the salary" (Merschrod v Cornell Univ., 139 AD2d 802, 805 [3d Dept 1988] [internal citation omitted]; see Durso v Baisch, 37 AD3d 646, 647 [2d Dept 2007]).
Under New York law, "the rule is settled that unless a definite period of service is specified in the contract, the hiring is at will and the [employer] has the right to discharge and the [employee] to leave at any time" (Watson v Gugino, 204 NY 535, 541 [1912]). Thus, "absent an [*5]agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party" (Sabetay v Sterling Drug, 69 NY2d 329, 333 [1987]). "The at-will presumption may be triggered when an employment agreement fails to state a definite period of employment, fix employment of a definite duration, establish a fixed duration or is otherwise indefinite" (Rooney v Tyson, 91 NY2d 685, 689 [1998] [internal quotation marks, brackets and citations omitted]).
Under the alleged Compensation Agreement sued upon by Morizio, there is no period of service defined by reference to a fixed termination date. Rather, ARMI's purported obligation to employ and compensate Morizio "continue[s] until the later of such time that (i) [ARMI] is managing investment assets that equal or exceed one hundred million dollars ($100,000,000), as determined by an Audit or (ii) the Parties enter into a new compensation agreement (Higgs Aff., Ex. J, ¶ 2 [emphasis added]).
In Rooney, the Court of Appeals held that a contract to render personal services throughout the career of a professional heavyweight boxer was sufficiently definite to render the at-will doctrine inapplicable: "New York's jurisprudence is supple and realistic, and surely not so rigid as to require that a definite duration can be found only in a determinable calendar date. Thus, although the exact end-date of [the boxer's] professional . . . career was not precisely calculable, the boundaries of beginning and end of the employment period are sufficiently ascertainable," particularly where the compensation to be paid under the contract "was expressly linked to a percentage of [the boxer's] earnings within the professional career measuring rod" (91 NY2d at 692).
Unlike the agreement in Rooney, in which the obligation to employ and compensate the trainer could last no longer than the professional career of the heavyweight prizefighter — an inherently limited duration — there is no outer bound on ARMI's alleged obligation to employ and compensate Morizio. Rather, Morizio's entitlement to employment and compensation under the Compensation Agreement would continue throughout his lifetime, unless and until he decides to relinquish that entitlement by assenting to a new compensation agreement with ARMI.
To be sure, "[a]n agreement can establish a fixed duration even if its duration cannot be determined ab initio, . . . as long as the duration 'is delimited by legally and realistically cognizable boundaries'" (Reddington v Staten Island Univ. Hosp., 511 F3d 126, 137 [2d Cir 2007], quoting Rooney, 91 NY2d at 691). Thus, if the alleged Compensation Agreement remained in force and effect only until ARMI was managing at least $100 million in assets, as originally drafted (see infra),the Court would be inclined to conclude that defendants had failed to demonstrate the indefiniteness of the agreement as a matter of law (see Lichtman v Estrin, 282 AD2d 326, 328 [1st Dept 2001]). The same would be true if the term's conditional language were written in the disjunctive, and the alleged Compensation Agreement continued only until the first of the two specified conditions was met.
But, in the Court's view, ARMI's alleged contractual agreement to employ and compensate Morizio until such time as he agrees to relinquish the benefits of that agreement by choosing to assent to a new compensation agreement creates an employment obligation that is perpetual in nature. For this reason, the Court concludes that the Compensation Agreement lacks the type of "legally and realistically cognizable boundaries" that are "experientially limited and ascertainable by objective benchmarks" (Rooney, 91 NY2d at 691-692). In other words, [*6]"[w]hatever the precise limits of the doctrine enunciated in Rooney, the [promise allegedly] made to [Morizio] clearly lie[s] outside of them" (Reddington, 511 F3d at 138).
Based on the foregoing, the Court concludes that the alleged Compensation Agreement fails to fix a definite period of employment for Morizio, "thereby creating nothing more than an employment at will that was terminable [by ARMI] without a breach of contract" (Todd v Grandoe Corp., 302 AD2d 789, 790 [3d Dept 2003]; see Rooney, 91 NY2d at 689).[FN3]

2. Lack of Mutual Assent
Defendants further contend that Morizio's claim for breach of contract fails because the Compensation Agreement was not signed or otherwise assented to by a representative of ARMI. As the proponent of the alleged contract, Morizio bears the ultimate burden of establishing the formation of a valid contract (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [3d Dept 2009]), which requires proof of the parties' mutual assent and intention to be bound (see Kowalchuck v Stroup, 61 AD3d 118, 121 [1st Dept 2009]). The test is a purely objective one (see Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399-400 [1977]).
"Generally, where the parties contemplate that a signed writing is required, there is no contract until one is delivered" (Gallagher v Long Is. Plastic Surgical Group, P.C., 113 AD3d 652, 653 [2d Dept 2014], lv denied 22 NY3d 865 [2014]). In other words, "if the parties to an agreement do not intend [a contract] to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed" (Scheck v Francis, 26 NY2d 466, 469-470 [1970]; see R.G. Group, Inc. v Horn & Hardart Co., 751 F2d 69, 74-75 [2d Cir 1984]). On the other hand, "[a]n unsigned contract may be enforceable when objective evidence establishes that the parties intended to be bound" thereby (Brighton Inv., Ltd. v Har-Zvi, 88 AD3d 1220, 1222 [3d Dept 2011]).
The proof adduced by defendants shows that the parties began to revisit the compensation issues first addressed in the Shareholder Agreement in or about September 2006, and Morizio forwarded an outline of a preliminary plan to an attorney of his choosing — Adam Siegelheim of the law firm of Stark & Stark — in early October 2006 (see Higgs Aff., Exs. B - E; Ex. A ["Morizio EBT"], pp. 98-104). Siegelheim then forwarded a draft of the Compensation Agreement to Morizio in early November 2006 (see Higgs Aff., Ex. F). 
As initially drafted, the agreement would remain in effect only until ARMI had $100 million or more in assets under management (id.). Additional discussions among the parties ensued, and Morizio shared a summary of these discussions with Siegelheim on November 15, 2006 (see Higgs Aff., Ex. G; Morizio EBT, pp. 119-121). However, none of the "suggestions for modification" provided to counsel concerned the term of the agreement (Higgs Aff., Ex. G).
On December 7, 2006, Siegelheim sent Morizio a blacklined version of the proposed Compensation Agreements and said that he would call tomorrow to walk "through the changes" (Higgs Aff., Exs. H, I). Morizio did not know whether this blacklined draft ever was sent to Roeder and Reiner, and there is no documentary evidence indicating that it was (see Morizio EBT, pp. 124-127). After reviewing the revised agreement, Morizio emailed Siegelheim on [*7]December 11, 2006 "with a minor change and a question" (Higgs Aff., Ex. H). The question posed by Morizio was as follows: "Should'nt (sic) [section two] say that this agreement stays inforce (sic) until the new one is negotiated? Or, something like it, since it sounds that we would be without an agreement at that point" (id.). 
Several hours later, Siegelheim sent Morizio revised copies of his Compensation Agreement as well as proposed compensation agreements for Roeder and Reiner, which Morizio forwarded to them (see id.; Higgs Aff., Ex. J). The new version of the Compensation Agreement amended the term of the agreement to provide that it shall remain in effect until ARMI had $100 million or more under management or the parties entered into a new compensation agreement, whichever is later (see Higgs Aff., Exs. J, K).[FN4]
 Roeder and Reiner's draft compensation agreements were for the same term (see id.). 
The copy of the Compensation Agreement signed by Morizio on December 15, 2006 includes several other changes that did not appear in the "final" version of the agreement transmitted by Siegelheim on December 11, 2006: (a) under section 1.1 of the agreement, the language excluding from Morizio's compensation "monies that were raised through the sole efforts of another employee" was amended by adding the word "verifiable" prior to "sole efforts"; (b) section 1.2 was amended to require that Morizio be paid on a monthly, rather than quarterly, basis; and (3) duplicative language was added, apparently by mistake, to section 1.3 with respect to the good faith resolution of disputes (compare Higgs Aff., Exs. J, K, with Ex. L).
Reiner testified that he first learned that the term of the Compensation Agreement had been changed after signing and reviewing his own compensation agreement on December 15, 2006 (see Higgs Aff., Ex. M ["Reiner EBT"], pp. 255-256). Reiner explained that the new term was not acceptable to him because "[it] basically . . . put [ARMI] in a position where one person can control if you ever change anything" (id., p. 256). Reiner also was concerned by the addition of the word "verifiable," testifying that verification efforts would be overly complex and cumbersome for a small company like ARMI (id., p. 257). He also remained concerned that the level of compensation to be paid to Morizio was ambiguous insofar as it provided for payment of "four-tenths percent (.04%) of monies raised," since four-tenths of one percent should be written as ".40%" (id., p. 256). 
Reiner brought these issues to Roeder's attention and, in light of the unilateral and unexplained changes made to the "final" documents and Morizio's failure to correct the discrepancy regarding his compensation, they refused to execute Morizio's Compensation Agreement on behalf of ARMI (see id., pp. 256-267, 262-263; Higgs Aff., Ex. N ["Roeder EBT"], pp. 87-91). Thus, it is undisputed that the Compensation Agreement signed by Morizio on December 15, 2006 does not bear the signature of Reiner, Roeder or any other officer, director or employee of ARMI (see Morizio EBT, p. 35).
Instead, the signature line on the Compensation Agreement reserved for ARMI's representative was signed by Nicholas J. Audi (see Exs. L, O ["Audi EBT"], p. 8). The record shows that Audi, a friend and employee of Morizio's, served as the "concierge"/receptionist in [*8]the shared office space owned by Morizio in which TCFP, ARMI and certain other tenants were located (Audi EBT, pp. 6, 9-10). As the office concierge, Audi "was like the front desk person," where he answered telephone calls, greeted visitors and performed other administrative duties (id., pp. 9-11). Audi did not work for ARMI and was not otherwise affiliated with the corporation, but he would do "whatever [he] could do to be helpful" — as Audi did for all of Morizio's tenants (id., pp. 11-12).
Audi acknowledges that he signed the Compensation Agreement in the space provided for the signature of an ARMI representative, he had no authority to sign on ARMI's behalf, and he has no recollection of ever having been asked to sign a document on behalf of ARMI (see id., pp. 13, 15-16). The only explanation Audi could offer for signing the Compensation Agreement was as a witness to Morizio's signature (see id., pp. 30-31). In fact, the text preceding the line on which ARMI's representative was to sign reads as follows: "IN WITNESS THEREOF, the parties hereto have duly executed this Agreement the day and year first above written" (Higgs Aff., Ex. L).
In response to the proof adduced by defendants showing that the Compensation Agreement was signed only by Morizo and his employee/friend Audi — and not by any representative of ARMI — Morizio argues that "[g]enuine issues of material fact exist as to whether ARMI intended to be bound by the agreements Morizio, Reiner and Roeder negotiated through sophisticated counsel, read, signed, had witnessed, benefitted from, and never took issue with until they became Defendants in this lawsuit six years later" (Opp. Mem., p. 1).
Morizio first contends that the parties' conduct preceding execution of the Compensation Agreement evinces defendants' intend to be bound thereby. In particular, Morizio cites language in the Shareholders Agreement expressing the parties' intention to amend their "initial agreement . . . in approximately [18] months" (Wagoner Aff., Ex. F). He also cites the negotiations and communications preceding transmission of the "final" agreements to Reiner and Roeder on December 11, 2006 (see Higgs Aff., Exs. B-H), as well as Reiner and Roeder's failure to raise any objections to the December 11, 2006 draft prior to Morizio's execution of his Compensation Agreement on December 15, 2006. Morizio further avers that Reiner and Roeder agreed to amend the term of their compensation agreements upon learning that they all would be without contracts once ARMI had $100 million or more under management (see Morizio Aff., ¶¶ 40-41).
The Court does not find Morizio's contentions in this regard to be persuasive. Even assuming the truth of his factual averments regarding the parties' pre-execution conduct, there simply is no evidence of any objective manifestation of ARMI's assent to the version of the Compensation Agreement signed only by Morizio and Audi (see Higgs Aff., Ex. L). In particular, the emails from Reiner and Roeder all concerned earlier drafts of the agreement. In any event, it is apparent from the draft Compensation Agreement itself, the process by which it was prepared, and the parties' communications and other conduct that ARMI did not intend to be bound by the Compensation Agreement unless and until it was formally executed by both parties.
Morizio further contends that the parties' conduct at the time of execution proves defendants' intent to be bound by the Compensation Agreement. According to Morizio, the parties sat together in the conference room on December 15, 2006, reviewed the agreements, executed them with an intent to be bound, and had Audi execute them to ensure that they were official and binding (see Morizio Aff., ¶¶ 43-46).
But Morizio's version of events on December 15, 2006 elides over one simple and undisputed fact: his Compensation Agreement was not signed by Reiner, Roeder or any authorized representative of ARMI. Thus, Morizio's testimony that the parties all sat down, read the agreements and signed them is flatly contradicted by conclusive documentary evidence insofar as he maintains that a representative of ARMI signed his Compensation Agreement (see also Morizio EBT, p. 35). 
Equally without merit is Morizio's contention that Reiner and Roeder somehow manifested ARMI's assent to the Compensation Agreement by allegedly being present in a conference room while the parties signed various documents and Audi witnessed certain signatures. In fact, Roeder and Reiner's refusal to sign Morizio's agreement on behalf of ARMI demonstrates just the opposite: that ARMI had not assented to the Compensation Agreement.
And while Audi may have believed that he signed the Compensation Agreement as a witness in order "to do it the right way legally" and "make it a binding, official, document transaction" (Audi EBT, pp. 57-58), Audi's subjective beliefs, opinions and legal conclusions do not represent objective evidence of ARMI's assent.
Next, the Court rejects Morizio's contention that Audi had actual or apparent authority to execute the Compensation Agreement on behalf of ARMI. Actual authority, whether express or implied, "exists when an agent has the power 'to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he [or she] is privileged to do because of the principal's manifestation to him [or her]'" (Forest Park Coop., Inc., v Commonwealth Land Tit. Ins. Co., 2011 NY Slip Op 31352[U], *10-11 [Sup Ct, Queens County 2011], quoting Minskoff v American Exp. Travel Related Servs. Co., 98 F3d 703, 708 [1996] [quoting Restatement (Second) of Agency § 7, Comment a (1958)]).
The Court rejects the risible notion that ARMI authorized Audi — the front-desk receptionist in shared office space — to execute the Compensation Agreement on the corporation's behalf. Audi concedes that he had no authority to act on behalf of ARMI unless specifically directed to do so by defendants; he has no recollection of ever being asked by defendants to sign documents for ARMI; he does not believe that he ever was directed to sign for ARMI; and he has no recollection of having been asked to execute the Compensation Agreement on behalf of ARMI (see Audi EBT, p. 13-16). And Audi's speculations and assumptions about the circumstances in which he would or would not sign documents on behalf of ARMI or as a witness are just that: speculations and assumptions.
"Apparent authority will only be found where words or conduct of the principal — not the agent — are communicated to a third party, which give rise to a reasonable belief and appearance that the agent possesses authority to enter into the specific transaction at issue" (Edinburg Volunteer Fire Co., Inc. v Danko Emergency Equip. Co., 55 AD3d 1108, 1110 [3d Dept 2008] [citations omitted]; see Hallock v State of New York, 64 NY2d 224, 231 [1984]). In addition, "a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable" (Hallock, 64 NY2d at 231). Morizio has not identified any words or conduct on the part of defendants giving rise to a belief on his part — much less a reasonable belief — that defendants authorized Morizio's building concierge to sign the Compensation Agreement on behalf of ARMI.
Finally, Morizio has failed to raise a triable issue of fact regarding his claim that ARMI's [*9]subsequent conduct manifested the corporation's assent to the unsigned Compensation Agreement or that ARMI ratified said agreement. "[A]n agreement executed without proper authority may be enforceable under the doctrine[] of . . . ratification" (IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A., 83 AD3d 573, 575 [1st Dept 2011], affd 20 NY3d 310 [2012], cert denied 569 US 994 [2013]). "'Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority" (Rocky Point Props.v Sear-Brown Group, 295 AD2d 911, 913 [4th Dept 2002] [internal quotation marks and citation omitted]; see Jayne v Talisman Energy USA, Inc., 84 AD3d 1581, 1583 [3d Dept 2011], lv denied 17 NY3d 710 [2011]). The burden of proof rests upon the party asserting ratification (see e.g. Goldstein v Tank, 73 Misc 300, 304 [Onondaga County Ct 1911], affd 149 App Div 341 [4th Dept 1912]).
While Morizio submits a self-serving affidavit averring that defendants represented that the Compensation Agreement was effective (¶¶ 49-50), his allegations in this regard are highly conclusory and unsupported by the particulars of who made the alleged representations, when the representations were made and the substance of the representations. Moreover, Morizio concedes that he never was paid pursuant to the alleged Compensation Agreement (see Morizio EBT, p. 33), and he has not submitted proof of any performance on his part unequivocally referable to the alleged agreement. And, of course, the parties clearly intended to be bound only upon the execution of signed, written compensation agreements, and Morizio never obtained the signature of an ARMI representative on his Compensation Agreement. Under the circumstances, the highly equivocal subsequent conduct upon which Morizio relies is insufficient to raise a triable issue of fact as to ARMI's assent to the unsigned Compensation Agreement or as to ratification of Audi's execution thereof.[FN5]

3. Statute of Frauds
The third ground for dismissal of the contractual claim tendered by defendants is the Statute of Frauds. Where an alleged employment contract "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime" (General Obligations Law § 5-701 [1]), "a writing must identify the parties, describe the subject matter, state all the essential terms of an agreement, and be signed by the party to be charged" (Durso, 37 AD3d at 647 [internal quotation marks and citation omitted]). "In order to remove an agreement from the application of the statute of frauds, both parties must be able to complete their performance of the contract within one year" (Sheehy v Clifford Chance Rogers & Wells LLP, 3 NY3d 554, 560 [2004] [citations omitted]; see Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]; see also South Cherry St., LLC v Hennessee Group LLC, 573 F3d 98, 105-107 [2d Cir 2009]). 
In his opposition, Morizio does not dispute defendants' contention that the Compensation Agreement is subject to the Statute of Frauds, but he does argue that his unsigned Compensation [*10]Agreement may be read together with the signed compensation agreements of Roeder and Reiner in order to satisfy the statute (see Crabtree v Elizabeth Arden Sales Corp., 305 NY 48, 55 [1953]). The Court disagrees. As defendants correctly observe, there is nothing in the compensation agreements of Reiner or Roeder that evince any intention to bind ARMI to the unsigned Compensation Agreement of Morizio. Thus, there simply is no signed writing in this record manifesting ARMI's intent to be bound by the Compensation Agreement. Accordingly, the alleged Compensation Agreement also fails under the Statute of Frauds.
4. Conclusion
Based on the foregoing, the Court concludes that: (a) the alleged Compensation Agreement fails to fix a definite period of employment for Morizio, thereby creating nothing more than employment at will; (b) Morizio has failed to come forward with proof of ARMI's assent to the alleged Compensation Agreement; and (c) the unsigned Compensation Agreement is barred by the Statute of Frauds. For all these reasons, the first cause of action, alleging breach of contract, is dismissed.
B. Accounting
Morizio's second cause of action demands an accounting. The Complaint cites provisions of the alleged Compensation Agreement calling for ARMI to provide Morizio with periodic statements setting forth the calculation of his compensation in reasonable detail (see Compl., ¶ 58), as well as provisions calling for ARMI to provide Morizio with reasonable access to the books and records of the corporation to verify his compensation (id., ¶ 59). 
The Court concludes that the accounting claim must be dismissed. The claim is predicated on allegations that an accounting is needed to determine what Morizio is owed under the Compensation Agreement,[FN6]
 but it is well-settled that an equitable action for an accounting will not lie where the parties' relationship arises out of a contract (see Associated Mortg. Bankers, Inc. v Calcon Mut. Mortg. LLC, 159 F Supp 3d 324, 339 [EDNY 2016] [collecting authorities]). Moreover, given the Court's dismissal of the contractual claim, there is no demonstrated need for an accounting (see Roslyn Union Free School Dist. v Barkan, 16 NY3d 643, 653 [2011]; Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 102 AD3d 1033, 1037 [3d Dept 2013]). For all these reasons, the second cause of action is dismissed.
C. Fraud
As limited by the 2014 Decision, the claim of fraud alleges that defendants misrepresented that Morizio would be compensated under the Compensation Agreement and given access to ARMI's books and records to verify his compensation thereunder (see Compl., ¶ 65 [B-C]). Defendants urge dismissal of the fraud claim on the ground that the alleged fraud is not independent of the parties' alleged contractual relationship.
On a claim of fraud, plaintiff bears the ultimate burden of establishing "a misrepresentation or a material omission of fact which was false and known to be false by [*11][defendants], made for the purpose of inducing [plaintiff] to rely upon it, justifiable reliance of [plaintiff] on the representation or material omission, and injury" (Bynum v Keber, 135 AD3d 1066, 1067-1068 [3d Dept 2016] [internal quotation marks and citations omitted]). To establish a fraud claim arising in connection with a contractual relationship, "the plaintiff must allege a breach of duty which is collateral or extraneous to the contract between the parties" (Krantz v Chateau Stores of Canada, 256 AD2d 186, 187 [1st Dept 1998]; see Cole, Schotz, Meisel, Forman & Leonard, P.A. v Brown, 109 AD3d 764, 764 [1st Dept 2013]). In other words, where the alleged misrepresentation concerns a promise of future contractual performance, the representation must concern a matter "sufficiently discrete from that underlying the breach of contract claim" (Kosowsky v Willard Mtn., Inc., 90 AD3d 1127, 1129 [3d Dept 2011]).
Here, the "fraud cause of action falls short under the principle that a fraud claim is not stated by allegations that simply duplicate, in the facts alleged and damages sought, a claim for breach of contract, enhanced only by conclusory allegations that [defendants] made a promise while harboring the concealed intent not to perform it" (Cronos Group Ltd. v XComIP, LLC, 2017 NY Slip Op 06515, *5 [1st Dept 2017]). The misrepresentations alleged by Morizio in support of his fraud claim pertain directly "to the manner in which [ARMI] agreed to perform under [an alleged contract]" and "promises to perform in the future pursuant to [the alleged] contract" (Reiser Inc. v Roberts Real Estate, 292 AD2d 726, 727-728 [3d Dept 2002]). Further, Morizio's opposition does not include proof of any misrepresentations distinct from the alleged agreement (cf. Kosowsky, 90 AD3d at 1129).
As such, the allegations supporting the fraud claim "are indistinguishable from those that plaintiff[] made alleging that defendants breached [the alleged agreement]" (Carpenter v Plattsburgh Wholesale Homes, Inc., 83 AD3d 1175, 1176 [3d Dept 2011]), and the damages demanded — the "lost compensation" Morizio allegedly was promised (Compl., ¶ 72) — also are the same. Accordingly, the fraud claim is dismissed.
D. Quantum Meruit
Finally, the claim for quantum meruit alleges that Morizio performed services for defendants since December 2006, and all parties were aware that he expected compensation for such services. "A cause of action for quantum meruit requires a showing of a plaintiff's performance of services in good faith, acceptance of those services by a defendant, an expectation of compensation and proof of the reasonable value of the services provided" (Hyman v Schwartz, 127 AD3d 1281, 1282 [3d Dept 2015] [internal quotation marks and citations omitted]). 
In moving for dismissal, defendants argue that the services for which Morizio seeks recovery were undertaken either in exchange for Morizio's shares of ARMI stock or in his capacity as an ARMI stockholder. In this connection, defendants cite securities and other regulatory filings that do not identify Morizio as an employee of ARMI and represent that Morizio had no day-to-day duties for the corporation. Defendants further argue that Morizio has failed to establish the reasonable value of any such services rendered to the corporation. Finally, defendants contend that the claim fails insofar as Morizio seeks the benefit of his alleged bargain under the Compensation Agreement.
The Court does not find these contentions to be persuasive in the context of obtaining dismissal of the quasi-contractual claim. The relief sought on the quantum meruit claim is "the [*12]fair and reasonable value of the services rendered and accepted by the Defendants" (Compl., ¶ 88), and plaintiff is under no obligation as the non-movant to prove the reasonable value of said services.[FN7]
 Further, while the issue raised by defendants concerning the role(s) in which Morizio allegedly rendered services to (or on behalf of) ARMI is a substantial one, the present record fails to conclusively establish as a matter of law that all of the services sued upon by Morizio were done to obtain his shares of ARMI stock or undertaken solely in his capacity as a shareholder.
Accordingly, the Court concludes that defendants have failed to eliminate all material issues of fact concerning Morizio's quasi-contractual claim. For this reason, the branch of the motion seeking dismissal of the quasi-contractual claim is denied.
PLAINTIFF'S MOTION AND CROSS MOTION
Morizio moves for "leave to amend the amended complaint and . . . leave to renew his prior motion to amend the amended complaint" (Notice of Motion for Leave [to] Amend Amended Complaint And/Or Renew). Morizio also cross-moves in response to defendants' motion for summary judgment for an order compelling further disclosure.
A. Background
Plaintiff's motion to amend his complaint to expand the scope of this litigation and his cross motion to compel further disclosure with regard to his current claims both seek to revisit discretionary case management determinations made by the Court over the long course of this litigation. 
The 2017 Decision, issued on February 17, 2017, denied Morizio leave to amend his complaint to replead the cause of action for breach of fiduciary duty that was dismissed via the 2014 Decision. Just two months later, on April 20, 2017, Morizio filed the instant motion to amend his complaint to, among other things, add a cause of action for breach of fiduciary duty. 
The proposed amended complaint also seeks to delete Morizio's cause of action for judicial dissolution, for which he was denied leave in the 2014 Decision and again in the 2017 Decision.[FN8]
 In addition, Morizio proposes to add claims that Reiner and Roeder breached the Shareholder Agreement by converting their capital contribution into a loan and that Morizio was fraudulently induced into agreeing to allow Gonick to acquire a small equity stake in ARMI. The proposed new claims are said to be predicated on newly discovered documents obtained from [*13]Gonick pursuant to a subpoena in or about early April 2017.
The same modest production of Gonick documents also forms the basis of Morizio's cross motion to compel further disclosure. According to Morizio, defendants have engaged in "selective" disclosure in this action, "skirt[ing] their discovery obligations through obfuscation and delay tactics . . . " (MOL, p. 1). Plaintiff takes particular issue with defendants' response to Request No. 5 of his Second Demand for Discovery and Inspection ("Request No. 5"), which called for defendants to "[p]roduce each document, communication and correspondence related to communications with ARMI stockholders between March 2008 and October 2012" (id., p. 6). Upon reviewing the Gonick production, Morizio asserted that defendants had failed to comply with Request No. 5.
After Morizio and his counsel brought this issue to the Court's attention and both sides submitted letter briefs, a conference was held on April 21, 2017. Upon hearing informal argument from counsel and following careful review of Request No. 5, the Court found that the demand was inartfully drawn and potentially subject to disagreement by reasonable attorneys. In particular, defendants' understanding of the request as being directed at ARMI's communications with its four stockholders was not unreasonable, even if there was support in the detailed instructions accompanying Request No. 5 for the broader, alternative interpretation apparently intended by plaintiff's counsel, which would encompass any communication between, among or regarding any of the ARMI stockholders. The Court further observed at the conference that plaintiff's interpretation of Request No. 5 would result in a demand that was patently overbroad.
Given the confusion engendered by Request No. 5 and the resulting failure of defendants to produce potentially responsive documents bearing on Morizio's remaining claims, the Court decided, in the interests of fairness, to accord Morizio a limited opportunity for narrowly-tailored supplemental discovery. In particular, following the receipt of a proposed re-drafted demand by plaintiff and defendants' objections thereto, the Court issued a letter order on May 4, 2017 ("Letter Order"), which stated as follows:
In the exercise of its broad discretion to supervise the disclosure process and for substantially the reasons stated at the April 21, 2017 conference, the Court finds it appropriate to require defendants to produce to plaintiff the following: All documents, communications and correspondence by or between ARMI shareholders between March of 2008 and October of 2012 that refer[] to: (a) the compensation of Louis Morizio; (b) any contract or agreement between Morizio and ARMI; (c) the employment relationship, if any, between Morizio and ARMI; and (d) Morizio's role in ARMI.
Defendants shall produce such documents to plaintiff within twenty (20) days from the date of this Letter Order.
Morizio now seeks additional disclosure from defendants regarding Reiner and Roeder's compensation agreements, which was denied by the May 4, 2017 letter order, and to redepose Reiner and Roeder regarding these documents and the documents produced by Gonick.[FN9]

B. Motion to Amend/Renew
A motion for leave to amend a pleading should be freely granted, provided that there is no prejudice or surprise to the nonmoving party and the amendment is not plainly lacking in merit (see CPLR 3025 [b]; Smith v Haggerty, 16 AD3d 967, 967-968 [3d Dept 2005]). "Although delay alone is insufficient to bar amendment, denial of a motion to amend is appropriate when there is prejudice to the opposing party and no showing of a satisfactory excuse for the delay" (Gersten-Hillman Agency Inc. v Heyman, 68 AD3d 1284, 1289 [3d Dept 2009] [internal quotation marks and citations omitted]).
A motion for renewal must be "'based upon new[ly discovered] facts not offered on the prior motion that would change the prior determination . . . and . . . contain reasonable justification for the failure to present such facts on the prior motion'" (Valiando v Catalfamo, 138 AD3d 1271, 1273 [3d Dept 2016], quoting CPLR 2221 [e]).
Morizio's claim for breach of fiduciary duty was dismissed for pleading insufficiency in February 2014. The issue of whether to allow Morizio to replead this claim was squarely raised and decided in the 2017 Decision. In denying leave to amend the Complaint to allege breaches of fiduciary duty substantially similar to those sought to be alleged herein,[FN10]
 the Court explained:
Even assuming [an adequate demonstration of potential merit were made],[FN11]
 the Court further concludes, in the exercise of discretion, that plaintiff's protracted and unexplained delay in seeking amendment, together with the resulting prejudice to defendants, independently warrants denial of the motion.
It has been more than three years since plaintiff's cause of action alleging breach of fiduciary duty was dismissed for pleading insufficiency. In the interim, fact and expert discovery has been substantially completed, and the note of issue is due to be filed in short order.[FN12]
 To inject a wide range of new factual issues into the case at this late date . . . would expose defendants to substantial delay and expense that could have been avoided had plaintiff exercised even minimal diligence. And neither plaintiff's moving papers nor his affidavit in reply provide any excuse, satisfactory or otherwise, for plaintiff's lengthy delay in seeking amendment (2017 Decision, pp. 12-13).
Thus, the 2017 Decision clearly states that the denial of leave to amend was based upon the prejudice to defendants, plaintiff's lack of reasonable excuse, and the need to move this 2012 [*14]case forward to trial without further delay — irrespective of any issue concerning the potential merit of the proposed claim. As such, the fact that Morizio and his counsel were able to exploit fact discovery on his pleaded claims to garner evidence that is said to bear on the merits of his proposed claim for breach of fiduciary duty does not provide a persuasive basis for the Court to reconsider its prior denial of leave to amend.
Likewise, the branch of the motion seeking to allege claims for breach of the Shareholder Agreement and fraudulent inducement is denied for substantially the same reasons. Virtually all of the "new" evidence cited by Morizio was obtained from Gonick, but plaintiff always had the option of taking Gonick's deposition and subpoenaing relevant documents in Gonick's possession. More fundamentally, it is apparent that the proposed claims are premised largely on facts that were available to Morizio when he commenced this action and/or when defendants provided discovery responses to him in 2014.
For more than three years, defendants have prepared for the trial of this action by reference to the allegations of the Complaint, as limited by the 2014 Decision. Indeed, as the Court held in the 2017 Decision:
In sum, granting plaintiff's motion at this late date would prejudice defendants and delay the resolution of an action that already has been pending for far too long. Accordingly, in the absence of a reasonable excuse for plaintiff's protracted delay . . . , it would be an improvident exercise of discretion to allow plaintiff to serve a further amended complaint under the particular facts and circumstances of this case (id., p. 13).
The same considerations compel the denial of the instant motion to amend/renew.
C. Cross Motion to Compel
CPLR 3101 (a) mandates the "full disclosure of all matter material and necessary in the prosecution or defense of an action." However, a party is not entitled to unfettered disclosure and the Court is vested with broad discretion to manage the discovery process (see Buxbaum v Castro, 82 AD3d 925, 925 [2d Dept 2011]; Detraglia v Grant, 68 AD3d 1307, 1308 [3d Dept 2009]).
The cross motion to compel is denied in all respects. The Note of Issue and Certificate of Readiness have been filed, and plaintiff has failed to make any showing of special, unusual or extraordinary circumstances that would warrant additional disclosure (see Boisvert v Town of Grafton, 131 AD2d 910, 911 [3d Dept 1987]). Moreover, the issue of Request No. 5 was addressed in the May 4, 2017 Letter Order, which granted in part and denied in part Morizio's request to compel additional disclosure, and the Court has not been presented with any persuasive basis to revisit its prior exercise of discretion.[FN13]
 Moreover, the Court continues to reject plaintiff's allegation of intentional discovery violations by defendants and adheres to its prior determination that any non-compliance with Request No. 5 was the product of legitimate confusion engendered by an ambiguous discovery demand.
Relatedly, the Court rejects Morizio's suggestion that defendants' motion for summary [*15]judgment is premature. Under CPLR 3212 (f), summary judgment may be denied as premature where the opposing party has not yet had adequate opportunity to conduct discovery. It is necessary for the party opposing summary judgment to demonstrate how further discovery might reveal the existence of evidence within the exclusive knowledge of the movant that would warrant denial of the motion (see Green v Covington, 299 AD2d 636, 637 [3d Dept 2002]; Landes v Sullivan, 235 AD2d 657, 658 [3d Dept 1997]; Halsey v County of Madison, 215 AD2d 824, 824-825 [3d Dept 1995]). The mere hope that further discovery will disclose evidence that will prove the plaintiff's case is insufficient (see Ramesar v State of New York, 224 AD2d 757, 759 [3d Dept 1996], lv denied 88 NY2d 811 [1996]). 
Morizio has failed to establish how further discovery would bear on his opposition to defendants' motion. Plaintiff already has had the opportunity to depose Reiner and Roeder regarding their compensation agreements, and no amount of additional emails regarding other parties' compensation agreements will change the simple fact that Morizio's Compensation Agreement was not signed or otherwise assented to by ARMI. Thus, it would be entirely speculative to conclude that further discovery would yield material evidence within the exclusive possession of defendants.
CONCLUSION
Based on the foregoing, it is
ORDERED that defendants' motion for summary judgment is granted to the extent that the first, second and third causes of action are dismissed, and the motion is denied in all other respects; and it is further
ORDERED that plaintiff's motion to compel additional disclosure is denied in all respects; and it is further
ORDERED that plaintiff's motion to amend and/or for renewal is denied in all respects; and finally it is
ORDERED that the parties are directed to appear for a conference on January 29, 2018 at 10:00 a.m. for, among other things, the purpose of selecting a trial date on the remaining cause of action.
This constitutes the Decision & Order of the Court. This Decision & Order is being transmitted to defendants' counsel for filing and service, and all motion papers are being transmitted to the Albany County Clerk. The signing of this Decision & Order shall not constitute entry or filing under CPLR 2220, and counsel is not relieved from the applicable provisions of that section respecting filing, entry and Notice of Entry.
Dated: January 8, 2018
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
1. Notice of Motion for Leave [to] Amend Amended Complaint and/or Renew, dated April 20, 2016 (sic); Plaintiff's Memorandum of Law in Support of Motion for Leave to Amend the Complaint and Renew, dated April 20, 2017; Affidavit of Louis Morizio in Support of Motion for Leave to Amend the Amended Verified Complaint, sworn to April 20, 2017, with attached Exhibits 1-12; Affirmation of Matthew Wagoner in Support of Plaintiff's Motion to Amend and Renew, dated April 20, 2017, with attached Exhibits 1-20.
2. Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Amended Complaint and/or Renew, dated May 19, 2017, with attached Exhibits A-B; Affidavit of Gregory A. Roeder, sworn to May 17, 2017, with attached Exhibits A-F; Affidavit of Matthew P. Reiner, sworn to May 18, 2017; Affidavit of Michael J. Ryan, sworn to May 17, 2017, with attached Exhibit A; Affidavit of Jarrod H. Becker, sworn to May 19, 2017, with attached Exhibits 1-3; Attorney's Affidavit of Thomas J. Higgs, sworn to May 19, 2017, with attached Exhibits A-W.
3. Plaintiff's Memorandum of Law in Reply to Defendants' Opposition to Plaintiff's Motion for Leave to Amend the Complaint and Renew, dated May 25, 2017, Reply Affirmation of Matthew Wagoner in Support of Plaintiff's Motion to Amend and Renew, dated May 25, 2017, with attached Exhibit; Affidavit of Louis Morizio in Reply to Defendants' Opposition, sworn to May 25, 2017, with attached Exhibit.
4. Notice of Motion for Summary Judgment, dated July 11, 2017; Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed July 11, 2017; Affidavit of Thomas J. Higgs, Esq., sworn to July 11, 2017, with attached Exhibits A-AA; Affidavit of Gregory A. Roeder, sworn to July 10, 2017, with attached Exhibits 1-2; Affidavit of Matthew P. Reiner, sworn to July 7, 2017.
5. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated September 15, 2017; Affidavit of Louis Morizio, sworn to September 15, 2017; Affirmation of Matthew D. Wagoner in Opposition to Defendants' Motion for Summary Judgment, dated September 15, 2017, with attached Exhibits A-Y.
6. Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated October 20, 2017.
7. Notice of Cross-Motion to Compel, dated September 15, 2017; Plaintiff's Memorandum of Law in Support of His Motion to Compel the Production of Discovery, dated September 15, 2017; Affirmation of Matthew D. Wagoner in Support of Plaintiff's Motion to Compel the Production of Discovery, dated September 15, 2017, with attached Exhibits A-U.
8. Memorandum of Law in Opposition to Plaintiff's Motion to Compel, dated October 13, 2017; Attorney's Affidavit of Thomas J. Higgs, sworn to October 13, 2017, with attached Exhibits A-Q.
9. Plaintiff's Memorandum of Law in Reply in Further Support of Plaintiff's Motion to Compel, dated October 27, 2017; and Affidavit of Louis Morizio, sworn to September 15, 2017.



Footnotes

Footnote 1: Defendants' answer to the Complaint alleged counterclaims, but the Court granted their unopposed motion to discontinue the counterclaims by order dated July 31, 2017.

Footnote 2: In addition, the Court must determine the fair value of Morizio's shares in ARMI as of the day prior to the date of commencement of this action, unless the parties are able to reach agreement on that issue (see BCL § 1118 [b]). 

Footnote 3: There is nothing in plaintiff's opposition to the motion that rebuts the presumption of at-will employment (see Talansky v American Jewish Historical Socy., 8 AD3d 150, 150 [1st Dept 2004]).

Footnote 4: Thus, the effect of the amendment was to provide that the Compensation Agreement shall remain in effect until ARMI had $100 million or more under management and the parties entered into a new compensation agreement. 

Footnote 5: In this connection, the Court observes that the emails and testimony of Steven Gonick, who started with ARMI in or about May 2009 — are unsupported by personal knowledge of the relevant facts concerning contract formation, and Morizio supplies no basis to conclude that Gonick was a speaking agent for ARMI with respect to matters concerning Morizio's employment relationship, if any, with the corporation.

Footnote 6: The demand for an accounting set forth in the Complaint is not premised on allegations of a fiduciary relationship, and the Court declines Morizio's belated invitation to consider his claim as one brought as a shareholder of ARMI. In any event, such a claim has been subsumed into the BCL § 1118 valuation proceeding, for which Morizio has been accorded extensive pre-hearing disclosure.

Footnote 7: For this reason, the Court has no occasion to consider the parties' arguments and contentions as to whether any proven quasi-contractual recovery may take the form of a percentage of the assets under management by ARMI. As a general matter, however, recovery in quasi contract is restitutionary in nature and generally is limited to the reasonable value of the services or contributions rendered by plaintiff to the defendants (see Davis v Cornerstone Tel. Co., LLC, 78 AD3d 1263, 1264 [3d Dept 2010]; Waldman v Englishtown Sportswear, 92 AD2d 833, 836 [1st Dept 1983]). Moreover, it is well settled that a party cannot use a failed contract to establish the reasonable value of the services or contributions rendered (see Isaacs v Incentive Sys., 52 AD2d 550, 550 [1st Dept 1976]).

Footnote 8: In his opposition papers, Morizio now maintains that the deletion of the dissolution cause of action was not intended to deny defendants their BCL § 1118 rights and was merely a housekeeping matter.

Footnote 9: In the event that Morizio's motion to amend the Complaint is granted, he also seeks discovery regarding the new claims.

Footnote 10: Morizio sought to challenge "the compensation paid by ARMI to Roeder and Reiner, their personal stock trades over the years . . . and the facts and circumstances surrounding the 2011 stock issuance [that diluted Morizio's interest in ARMI]" (p. 12). The proposed complaint submitted in support of the instant motion includes essentially the same allegations of misconduct (compare Wagoner Aff. dated Nov. 17, 2016, Ex. K, ¶¶ 51-66, 97-124, with Wagoner Aff. dated Apr. 20, 2017, Ex. 2, ¶¶ 59-81, 129-141).

Footnote 11: The 2017 Decision was issued prior to NYAHSA Servs., Inc., Self-Insurance Trust v People Care Inc. (2017 NY Slip Op 07918 [3d Dept., Nov. 9, 2017]), in which the Third Department joined the other Departments in holding that no evidentiary showing of merit is required under CPLR 3025 [b]).

Footnote 12: The Note of Issue and Certificate of Readiness were filed on June 9, 2017.

Footnote 13: In the Court's view, the instant motion effectively is an untimely motion for reargument inasmuch as the Letter Order was issued after briefing and argument from both sides (see CPLR 2221 [d] [3]; see also plaintiff's submission of April 18, 2017 and defendants' response of April 20, 2017).